168 N.J. Super. 589 (1979)
403 A.2d 963
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN A. CARPENTIERI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1979.
Decided June 11, 1979.
*590 Before Judges LYNCH, CRANE and HORN.
Mr. Gary A. Kroop argued the cause for appellant (Messrs. Stepacoff, Koch and Kroop, attorneys).
Mr. William F. Lamb, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney).
*591 PER CURIAM.
Defendant was convicted of possession and possession with intent to distribute a Controlled Dangerous Substance. The only contention on appeal is that the trial judge erred in denying defendant's motion to suppress evidence seized in a car driven by defendant after it was stopped for a routine "license and registration check."
At 11:30 A.M. on November 13, 1976 defendant was driving northwardly on the New Jersey Turnpike. Defendant was driving a full-sized sedan bearing Florida license plates. A trooper ordered appellant to stop. His explanation for doing so was "I was observing traffic. I observed his vehicle go by. It appeared to be weighed down in the rear."
The trooper asked for defendant's license and registration. While checking them the trooper testified that he smelled marijuana "emanating from the interior of the car." He emphasized that it was not coming from the rear of the car. However, he requested defendant to open the trunk and defendant did so. The State conceded that it was not contending that this was a consensual search. In any event, inside the trunk the trooper found and seized three Dog Chow bags containing 99 pounds of marijuana.
The State seeks to justify the search on the heretofore recognized ground that the police have a right to stop vehicles at random and demand production of the operator's driver's license and motor vehicle registration. State v. Gray, 59 N.J. 563, 567 (1971).
The Fourth Amendment issue thus implicated is now controlled by the recent decision of the United States Supreme Court in State of Delaware v. Prouse, ___ U.S. ___, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). There it was said:
[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. [99 S.Ct. at 1401]
*592 In our view the fact that, according to the trooper, the trunk was weighted down did not amount to a reasonable suspicion that either the vehicle or its occupant was subject to seizure for violation of law. This was nothing more than a "random stop" and search. Therefore, under Prouse, it was unreasonable under the Fourth Amendment.
However, in supplemental memoranda the State contends that since the search here occurred prior to the Prouse decision it can have no retroactive effect and therefore cannot dictate the rightness or wrongness of the search involved.
We disagree. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the court discussed the issue as to "retroactive" effect of the new principle of search and seizure law established in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The court quoted from Chief Justice Marshall's opinion in United States v. Schooner Peggy, 1 Cranch 103, 2 L.Ed. 49 (1801):
"`It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied * * *.'" [381 U.S. at 626, 85 S.Ct. at 1736, 14 L.Ed.2d at 606]
Linkletter concluded that, in general, a change of law will be given effect while a case is on direct review, citing Schooner Peggy, supra. However, since Linkletter's case had been finally decided before Mapp v. Ohio, its ruling was not to govern in the case before it.
On the other hand, in two cases which had not been finally decided on appeal at the time of the Mapp decision, its principles were applied to those cases. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 *593 L.Ed.2d 171 (1963); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
However in later years the United States Supreme Court held that the direct appeal/collateral review distinction was not an ironclad rule and that "`there are no jurisprudential or constitutional obstacles' to a different cut-off point." Desist v. United States, 394 U.S. 244, 252, 89 S.Ct. 1030, 1035, 22 L.Ed.2d 248 (1969); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Rather, the obligation to determine the retroactivity of constitutional decisions lies within the province of the state court. See State v. Lueder, 74 N.J. 62, 70 (1977).
In New Jersey the cases concerning retroactivity suggest the distinction between cases pending on direct review and those on collateral review. Compare State v. Smith, 37 N.J. 481 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed. 2d 1055 (1963), and State v. Evans, 78 N.J. Super. 437 (App. Div. 1963), with State v. Smith, 43 N.J. 67 (1964), cert. den. 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965), and State v. McNulty, 84 N.J. Super. 30 (App. Div. 1964).
Therefore, since this appeal was still pending at the time of the Prouse decision, its principle of exclusion of seized material effected on a "random stop" and search is applied here.
The judgment of conviction is reversed.